UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMY ROCK,

       Plaintiff,

                                  File No. 2:12-CV-255

v.

                                  HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

       Defendant.

_____/

## O P I N I O N

On September 7, 2012, Plaintiff Amy Rock filed her first amended complaint asserting negligence, on behalf of her son JP, and negligent infliction of emotional distress, on behalf of herself. (Dkt. No. 11.) Defendant United States of America filed a motion to dismiss for failure to state a claim and/or lack of jurisdiction, on September 21, 2012. (Dkt. No. 12.) On March 7, 2013, this Court held a hearing on that motion. (Dkt. No. 27.) For the reasons that follow, the motion will be granted.

### I.

Hannahville Indian School (a/k/a Nah Tah Wahsh PSA) runs an after-school program for children called "Kid Zone" through its 21st Century Community Learning Center ("21st CCLC"). (First Am. Compl. ¶ 7; Dkt. No. 13, at 3.) After this program, the children are transported across the street to the Hannahville Health Center's parking lot to await pick-up by a Bark River Bible Church school bus, which then takes the children to another after-school program. (First Am. Compl. at ¶ 15; Dkt. No. 13, at 5.) According to Plaintiff's

complaint, after sunset on February 3, 2010, Ida Meshigaud, a "youth services assistant," transported Plaintiff's nine year old son, JP, and other children from "Kid Zone" at the 21st CCLC to the Health Center parking lot and left them, without supervision, to wait for the church bus. (First Am. Compl. ¶¶ 15-16.) When the church bus came into the parking lot around 6:00 p.m. and made a u-turn, JP ran towards the bus and slipped on a patch of ice, sliding underneath the wheels of the bus, which ran over the lower portion of his body. (*Id.* at ¶¶ 17-18; Dkt. No. 6, Ex. 2A.)

## II.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be based on either a facial attack or a factual attack on the allegations of the complaint. *Tri–Corp Mgmt. Co. v. Praznik,* 33 F. App'x 742, 745 (6th Cir. 2002). When the Court reviews a factual attack on subject matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994); *Hirt v. Richardson*, 127 F. Supp. 2d 849, 852 (W.D. Mich. 2001). The Court may rely on affidavits or any other evidence properly before it and has wide latitude to collect evidence to determine the issue of subject matter jurisdiction. *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir. 1986).

## III.

Plaintiff argues that this Court has jurisdiction over the United States pursuant to the Federal Tort Claims Act ("FTCA"), which applies to this case through statutes related to the

2

funding of tribal organizations, most notably the Tribally Controlled School Act ("TCSA"), 25 U.S.C. §§ 2501-2511, and the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. §§ 450-458hh.  Defendant counters that the congressional appropriations act in effect at the time of the accident precludes the waiver of sovereign immunity under the FTCA in this case.  Defendant is correct.

**A. Applicability of the FTCA**

The FTCA contains a limited waiver of the United States' sovereign immunity: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  According to the FTCA:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The main issue for purposes of Defendant's motion is whether Meshigaud constitutes a federal employee for purposes of the FTCA.  The parties agree that Hannahville School was awarded TCSA funds from the Bureau of Indian Education for the 21st CCLC.  (Dkt. No. 17, Resp. Br. 8; Dkt. No. 20, Reply Br. 2.)  Supporting Plaintiff's position that Meshigaud is a federal employee is the fact that the ISDEAA explicitly provides that "an

3

Indian tribe, tribal organization or Indian contractor" is deemed to be a federal employee for the purposes of the FTCA "while acting within the scope of their employment in carrying out the [TCSA] contract or agreement."  25 U.S.C. § 450f(d).

However, according to the congressional appropriations act in effect at the time of the accident, "[e]mployees of Bureau-funded schools sharing a campus with a charter school and performing functions related to the charter schools [sic] operation and employees of a charter school shall not be treated as Federal employees for purposes of [the FTCA]."  Pub. L. No. 111-88, 123 Stat. 2919 (2009).

Language in an appropriations act is binding even if it contradicts the language of a more traditional legislative act.  "Congress . . . may amend substantive law in an appropriations statute, as long as it does so clearly."  *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 440 (1992).  "[W]e cannot ignore clear expressions of Congressional intent, regardless of whether the end product is an appropriations rider or a statute that has proceeded through the more typical avenues of deliberation."  *City of Chicago v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco and Firearms*, 423 F.3d 777, 782 (7th Cir. 2005); *see also Norton Constr. Co. v. U.S. Army Corps of Engs.*, 280 F. App'x 490, 493 (6th Cir. 2008) (holding that a passed and signed appropriations bill is "a binding act of Congress").

Thus, the appropriations act exception to the FTCA governs in this case if applicable. To see if it is implicated, this Court must determine whether Meshigaud is an employee of (a) a Bureau-funded school that shares a campus with a charter school and performs

4

functions related to the charter schools operation or (b) a charter school. *See* Pub. L. No. 111-88, 123 Stat. 2919 (2009).

## B. The 21st CCLC's status

Plaintiff argues that the appropriations act exception is not implicated because Meshigaud is an employee of the 21st CCLC, which is a separate entity from Hannahville School. Defendant counters that the 21st CCLC is an integrated part of Hannahville School and thus Meshigaud is an employee of Hannahville School. While the Court agrees with Defendant, the appropriations act exception is implicated in this case under either theory.

### 1. The 21st CCLC is an integrated part of Hannahville School

Hannahville School is a charter school. According to its articles of incorporation, Hannahville School is a "Public School Academy," which is a type of charter school in the Michigan school system. (Dkt. No. 6, Ex. 1.) The school also holds itself out as a charter school. (Dkt. No. 7, Ex. 5.) Plaintiff does not dispute this fact. However, as stated, Plaintiff argues that Meshigaud is an employee of the 21st CCLC and not Hannahville Schools, and that these are separate entities. Plaintiff offers the following support for this separation:

1. The 21st CCLC is available to all Hannahville youth who reside on or near the reservation, regardless of the day school the child attends.

2. The 21st CCLC is an actual physical structure.

3. The TCSA grants fund the 21st CCLC, not the Hannahville School.

4. As shown by the grant application, Meshigaud was a youth services assistant working in a direct line with the Director of Youth Services, Rodney Lovell, and the 21st CCLC.

5

5. None of the Hannahville School administrators are part of the 21st CCLC. (Dkt. No. 17, at 5-9.)

The Court finds that the distinction Plaintiff attempts to draw between the 21st CCLC and Hannahville School is artificial for purposes of the relevant statutes. On the Notice of Intent for the TCSA grant application, Hannahville School is listed as the name of the organization applying for the TCSA grant. (Dkt. No. 21, Ex. 1-B.) This document is signed by both the superintendent and school board president of Hannahville School. (*Id.*) Hannahville School is also listed as the grantee in the Bureau of Indian Education's records. (Dkt. No. 22.) Contrary to Plaintiff's assertion, Rodney Lovell, the director of the 21st CCLC, is "a member of the school's administration team." (Dkt. No. 21, Ex. 1-E, at PageID# 360-61.) Lovell reports to the Hannahville School superintendent. (Dkt. No. 17, Ex. 5.) Lastly, Plaintiff herself called Meshigaud an "assistant from the Hannahville Community School" in her administrative complaint. (Dkt. No. 6, Ex. 2A.) Thus, the 21st CCLC is not an independent entity.

This conclusion is supported by the legal framework of the TCSA. According to the governing statute, it is the *schools* which are allocated grant funds. *See* 25 U.S.C. § 2503(a)(3)(c). Indeed, only Indian schools which receive Bureau of Indian Education funding are eligible for grants through the TCSA. *See* 25 U.S.C. § 2504. Thus, it is Hannahville School which was allocated funds, not the 21st CCLC, meaning that the 21st CCLC is part and parcel of Hannahville School, and Meshigaud must be considered an

6

employee of Hannahville School.

Because Hannahville School is a charter school, Meshigaud is an employee of a charter school and cannot be treated as a federal employee for purposes of the FTCA's waiver of sovereign immunity. *See* Pub. L. No. 111-88, 123 Stat. 2919 (2009).

**2. If the 21st CCLC is treated as a separate entity**

However, even if the 21st CCLC was not integrated into the Hannahville School and the 21st CCLC was considered Meshigaud's employer, the appropriations act exception is still triggered because employees of "Bureau-funded schools sharing a campus with a charter school and performing functions related to the charter schools [sic] operation" are also not federal employees for purposes of the FTCA. Pub. L. No. 111-88, 123 Stat. 2919 (2009). There is no dispute that the 21st CCLC is Bureau-funded and shares a campus with the Hannahville School. Plaintiff admits that the 21st CCLC structure "is attached directly to the [Hannahville] school." (Dkt. No. 17, Resp. at PageID# 249.) That leaves only the question of whether the 21st CCLC performs functions related to Hannahville School's operation. In determining the scope of the word "operation," Plaintiff urges the Court to ignore the general rule that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Peña*, 518 U.S. 187, 192 (1996). Plaintiff relies on *Dolan v. United States Postal Service*, which held that that general rule is "'unhelpful' in the FTCA context, where 'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute,' which 'waives

7

the Government's immunity from suit in sweeping language.'" 546 U.S. 481, 491-92 (2006)
(quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984) & *United States v. Yellow Cab
Co.*, 340 U.S. 543, 547 (1951)).

However, even construing "operation" narrowly, the 21st CCLC performs functions
related to the operation of Hannahville School. The operation of any school is education first
and foremost, and the 21st CCLC performs functions to further the education of Hannahville
School's students. TCSA grants may only be used "for education related activities." 25
U.S.C. § 2502(a)(3)(A). Notably, the particular grant the 21st CCLC received came from
"No Child Left Behind," which explicitly defines the functions of a community learning
center:

> The term "community learning center" means an entity that–
>
> (A) assists students in meeting State and local academic achievement standards
> in core academic subjects, such as reading and mathematics, by providing the
> students with opportunities for academic enrichment activities and a broad
> array of other activities (such as drug and violence prevention, counseling, art,
> music, recreation, technology, and character education programs) during
> nonschool hours or periods when school is not in session (such as before and
> after school or during summer recess) that reinforce and complement the
> regular academic programs of the schools attended by the students served[.]

20 U.S.C. § 7171. No Child Left Behind further provides that "[e]ach eligible entity that
receives an award under this part may use the award funds to carry out a broad array of
before and after school activities (including during summer recess periods) that advance
student academic achievement[.]" 20 U.S.C. § 7175. Thus, the primary purpose of the 21st
CCLC is education.

This focus on education is also directly related to Hannahville School's operation: "The Hannahville Indian School is committing all resources (facilities, personnel, supplies etc.) at it's [sic] disposal to insure that the 21st Century grant is successful in helping to raise the achievement levels of the students at the Hannahville Indian School." (Dkt. No. 21, Ex. 1-D, Superintendent Letter.)  The Grant Application reports that the 21st CCLC "leverages the school's kitchen, cafeteria, library and weight room to offer the student a variety of programs and healthy snacks." (Dkt. No. 21, Ex. 1-E, at PageID# 363.)  The grant application also specifically states that the principals of both Hannahville's high school and elementary school "work closely with the 21st Century program." (*Id.* at PageID# 367.) While the Court believes this evidence further supports the conclusion that the 21st CCLC is an integrated part of Hannahville School, at a minimum it demonstrates that the 21st CCLC performs functions directly related to Hannahville School's operation.

At the hearing, Plaintiff's counsel argued that the language in the appropriations act should be read more specifically to refer only to the function being performed at the time of the accident.  Thus, he concludes that the transportation of children following an after-school program and the drop-off of those children at a pick-up site are not related to the operation of Hannahville School.  This argument is not supported by the plain language of the appropriations act, which does not require the employee in question to be performing a function related to the operation of a charter school at the time of the accident.  Instead, the act explicitly refers to the Bureau-funded school and whether *that school* shares a campus

with a charter school and performs functions related to the operation of the charter school. If a school satisfies both requirements, then *any* employee of that school is not considered a federal employee for torts committed within the scope of his or her employment. Here, both requirements are satisfied and Meshigaud's alleged torts occurred within the scope of her employment. Thus, the FTCA is inapplicable even if the 21st CCLC is considered a separate entity from Hannahville School.

### IV.

Because the FTCA is inapplicable, and no other waiver of the United States' sovereign immunity has been identified, this Court lacks subject matter jurisdiction. Consequently, Defendant's motion will be granted.

Dated: <u>March 13, 2013</u>                    <u>/s/ Robert Holmes Bell</u>
                                                                ROBERT HOLMES BELL
                                                                UNITED STATES DISTRICT JUDGE